UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


MELISSA MARION AND ANDREW MARION                                          PLAINTIFFS

V.                                                                CIVIL ACTION NO. 1:06cv969-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY,                                      DEFENDANTS
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, JOHN DOES A THROUGH G, AND
JANE DOES A THROUGH G

### ORDER

Plaintiffs have filed several [194] [196] [197] [213] [214] [216] 218] Applications for Review and Objections to Orders of Magistrate Judge.  They take exception to the Magistrate's decisions to [188] deny their [119] Motion to Compel discovery responses, and to grant [189] [190] defense motions [132] [158] to quash depositions of high-ranking corporate officers.  Three of the applications [213] [214] [216] are basically aimed at the same [200] order, in which the Magistrate granted in part and denied in part Plaintiffs' [137] Motion to Compel; denied Plaintiffs' [121] Motion for Sanctions; and, at an [201] order related to [200], granting defendants' [146] motion for protective order.  A review of the Magistrate's orders clearly shows that he carefully assessed the issues in the proper light, and that as a result he correctly drew the lines within the context of this particular litigation as governed by the Federal Rules of Civil Procedure.  With a few minor exceptions, which can be corrected easily so that the scheduled May, 2008, trial can still be held, this Court finds, under the standard of Fed. R. Civ. P. 72(a), that the Magistrate's orders overall are not clearly erroneous or contrary to law.

What might be called error arises from the Plaintiffs' being afforded more latitude than was necessary to develop the theory of their case.  There is not much in the challenged orders that pleases Plaintiffs, who have submitted a voluminous amount of material to support their applications for review.  The Court takes note of Plaintiffs' numerous references to the "established law of the case," as well as to the case of *Guice v. State Farm Fire and Casualty Co., et al.*, No. 1:06cv1.  Plaintiffs seem to rely on each as a springboard to rationalize the aggressive approach they believe should be taken in discovery.  However, it is the Court's view that Plaintiffs' wide-ranging theory of recovery is not synonymous with a guiding principle that dictates a different control apparatus or case designation of which they can take special advantage.  *See* discussion *infra*.  And in *Guice*, this Court, as Plaintiffs' counsel need not be reminded, twice refused to grant class certification under Fed. R. Civ. P. 23.  It is enough to say that *Guice* has been dismissed, and the Court will not recognize the instant case as one of its progeny.

Whether the facts recited in the Magistrate's orders surrounding the depositions of Mike

Carroll and Susan Hood are disputed or not (and they are hotly contested by the opposing parties), the determination that must be made is whether the testimony and information to be elicited is material, on the one hand, or, on the other, results in undue burden or expense.

Stephen Hinkle, the State Farm employee responsible for drafting the well known wind/water protocol, testified in his deposition (the one taken in *Guice*, which is among the exhibits attached to Plaintiffs' objections) that it was he who suggested its creation, and he did not need anyone's approval to do it (p. 73); that once his initial draft of this protocol was submitted to other State Farm personnel, presumably including Mike Carroll, a director in State Farm's automobile section, little substantive change was made (p. 73); and that Carroll, not being a "fire claim person," was not involved in homeowners coverage interpretation, but coordinated the administrative process (p. 71).

The deposition of Susan Hood, who is described as a top level claims executive, is sought to discuss requests for (or the failure to request) engineers to perform property inspections. In Plaintiffs' particular case, an engineer was originally anticipated to give a report on their house even though the inspections were eventually not made. However, what use Plaintiffs may be able to make of this aspect, or any possible conflict in the testimony of Joe Caruso, the adjuster assigned to Plaintiffs' claim (*compare* Magistrate's [189] order at 2 *with* Caruso deposition at 200), does not change the fact that there was no engineering inspection of Plaintiffs' loss.

With regard to Plaintiffs' Motion to Compel disposed of in [188], the Plaintiffs do not deny that they failed to comply with the method and requirements set out in Uniform Local Rule 37.1(B) for making a proper showing for relief. Still, that was not the only ground on which the Magistrate based his decision. Furthermore, just because a party files an emergency motion to expedite consideration of a discovery matter does not make it an emergency demanding expeditious treatment. The Magistrate also pointed out that the answers to the particular discovery were attested to by one of State Farm's agents and a logical extension is that these answers are binding on State Farm. Left in the position that the Plaintiffs offered only general assertions related to State Farm's discovery responses, the Magistrate acted well within his discretion in denying Plaintiffs' motions.

As for the motions to compel and for sanctions, it appears that Plaintiffs would be satisfied with nothing less than a full-blown search warrant for State Farm offices and personnel. The magistrate's comment in his [200] order that this case presents "one of the more contentious discovery battles on [the Court's] Hurricane Katrina docket" is a gross understatement. The magistrate went on to state in that order:

> The central dispute does not differ to any great degree from hundreds of other Katrina cases that have been filed in this Court . . . . What has made this case particularly challenging for the Court with respect to discovery is Plaintiffs' attempt to construct a broad-ranging conspiracy theory that reaches to the uppermost levels of State Farm and involves virtually all of State Farm's formulation of policies, guidelines, and other responses to Hurricane Katrina.

Apparently Plaintiffs are even determined to undermine the Fifth Circuit's decision in *Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007), and show the court of appeals the errors of its ways.  While *Tuepker* contains a certain amount of *obiter* (or perhaps *gratis*) *dicta*–though not to the extreme degree as in *Leonard v. Nationwide Mutual Insurance Co.*, 499 F.3d 419 (5th Cir. 2007)--and its applicability to the instant case is yet to be determined, that decision stands on its own.  And that is the point:  so does the instant case.

With that in mind, the gravest "error" committed by the Magistrate was thinking that "the parties [could] meet and confer to discuss any outstanding discovery requests," because after this "meet and confer" it was "clear that the parties had done little to resolve their perceived differences on document production."  It is no wonder that the Magistrate was "not entirely clear on precisely what State Farm agreed to produce as a result of the meet and confer."

A common thread that runs through the Magistrate's [200] order is that this litigation, including the discovery, should focus on and be limited to the Plaintiffs' claim.  To borrow the Plaintiffs' own words [213], "this case is about the claims of the Marions, who lost their only house in [Hurricane Katrina] on August 29, 2005"  (unfortunately, they are not unique in experiencing that tragic outcome from Hurricane Katrina).

At the same time, the Magistrate wisely incorporated some reasonable flexibility, such as requiring State Farm to produce claim files consistent with the order entered in *Muller v. State Farm*, No. 1:06cv95 (docket entry [44]).  The Magistrate's rationale is well stated in the concluding paragraph of his [200] order:

> With respect to Plaintiffs' request for sanctions, the Court finds that the motion should be denied.  State Farm's "non-compliance" resulted to a large degree from Plaintiffs' expansive and overly broad discovery requests.  In a sense, Plaintiffs' methods of discovery invited State Farm's non-compliance.  There has been no demonstration to the Court's satisfaction that State Farm has withheld documents that relate specifically to the Marion claims, with the possible exception of the 82 emails identified by State Farm.  The Court has indulged Plaintiffs' attempts to identify specific discoverable documents or categories of documents relating to their theories of conspiracy and fraud.  General requests for any and all documents or communications relating to claims handling procedures, such as have been made by Plaintiffs in this case, are vastly over inclusive and have had the effect of slowing down the litigation of this particular and specific claim.  The Court further has attempted to bring the parties together to reach an agreement with regard to document production.  In the end, the Court finds that this case is about the Marions' claim, the denial of that claim, and how it relates to the terms of the Marions' insurance policy.

For the most part, this Court agrees with these comments.  Because it does not appear to be reflected in the record, the Court has no reason to dispute Plaintiffs' assertions that this cause has been moved from its original [8] standard track (nevertheless, the Court's docket still shows a standard flag).  With the benefit of hindsight, this is not a complex case, and the fact that the amended scheduling order [117] entered in October 2007, shows an estimated trial time of 4 days

bolsters this belief.

Nothing in this order should be interpreted in such a way that suggests that any of the parties is completely without fault in contributing to the condition of this case. The Magistrate's mention of "non-compliance" indicates that there has been some resistance on State Farm's part to both Plaintiffs' and the Court's efforts, but it has not reached the level of being sanctionable. That does not mean that it will never cross into that territory. Furthermore, there is a hint in the motion papers of a possible continuance of the May trial date. This case has been continued once, and to put it bluntly, that is not going to happen again. It is time for this folly to come to an end–regardless of its cause–with some direction.

Likewise, the Court will not tolerate Plaintiffs' engaging in harassment or annoyance. In short, Plaintiffs will be controlled by the limitation that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2). All of these factors weigh the same in all other cases on this Court's Hurricane Katrina docket.

The Magistrate shall conduct a status conference as soon as possible to address, and primarily clarify, outstanding discovery issues that remain to be resolved. He is welcome to revisit any matters which are the subject of his various orders, with his guiding principle being Plaintiffs' underlying contract claim. This Court on numerous occasions has indicated that it is difficult to envision a breach of an insurance policy lawsuit without considering the procedure used in handling the claim and the reasons it was denied. Plaintiffs are not going to be allowed to reinvent the wheel as to the promulgation of policy language or follow a chain of custody with respect to documents or contract interpretation, unless they relate specifically to Plaintiffs' claim. Given the state of the record, the Court hesitates to use examples, but something that is "general" may still be discoverable (e.g., a claims procedure manual) if it was applied to or governed Plaintiffs' claim. At some point, however, there are limits, and if the State Farm defendants have concerns, they can present the material to the Magistrate for *in camera* inspection. Of course, admissibility of any evidence will be for the Court to ultimately determine.

This Court demands the mutual cooperation of the parties. It hopes that some agreement can be reached; it is also understood that legitimate disagreement may exist, in which case the Magistrate is empowered to resolve it. Neither he nor this Court will hesitate to impose sanctions on any one–party or counsel or both–who engages in any conduct that causes unnecessary delay or needless increase in the cost of litigation. *See generally* Fed. R. Civ. P. 26(g).

Accordingly, **IT IS ORDERED**:

The [194] [196] [197] [213] [214] [216] [218] Applications for Review are **DENIED** subject to the provisions of this Order, and this matter is referred to the United States Magistrate Judge for proceedings consistent herewith.

**The trial of this cause of action shall not be continued**.

**The mediation in this cause of action scheduled for 1:00 p.m. on Thursday, March 20, 2008, shall also not be continued.  Failure in any regard to comply with the [198] Order for Mediation and any related matters shall result in the imposition of sanctions.**

**SO ORDERED** this the 17th day of March, 2008.

                                                      s/ L. T. Senter, Jr.
                                                      L. T. SENTER, JR.
                                                      SENIOR JUDGE